NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000557
06-JUN-2014
08:03 AM

NO. CAAP-11-0000557

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

SHERRI CASPER, Plaintiff-Appellant/Cross-Appellee,
v.
VIJAK S. AYASANONDA, M.D. and THE EMERGENCY GROUP, INC.,
Defendants-Appellees/Cross-Appellant,
and
LILY L.L.L. GALLAGHER, M.D.; THE QUEENS MEDICAL CENTER;
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE
CORPORATIONS 1-10; DOE "NON-PROFIT" ORGANIZATIONS 1-10; DOE
TRUSTS 1-10 and ROE GOVERNMENTAL AGENCIES 1-10, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-0613)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Plaintiff-Appellant/Cross-Appellee Sherri Casper
(Casper) appeals from a "Judgment" filed on July 20, 2011, in the
Circuit Court of the First Circuit (circuit court).[1] After a
jury trial and based on the jury's responses to a Special Verdict
Form, judgment was entered against Casper and in favor of
Defendants-Appellees/Cross-Appellants Vijak S. Ayasanonda, M.D.,
(Dr. Ayasanonda) and The Emergency Group, Inc. (EGI)
(collectively the Defendants) on Count I (Negligence) and Count

---

[1] The Honorable Rom A. Trader presided.

II (Informed Consent) of Casper's complaint. All other claims were dismissed.[2]

In this case, Casper contends that when she went to the Emergency Department (ED) at Queen's Medical Center (QMC), Dr. Ayasanonda mis-diagnosed her with cervicitis, suggestive of pelvic inflammatory disease (PID), and failed to properly diagnose appendicitis. Casper was discharged from the ED with treatment to address PID and was told, among other things, to return to the ED if her symptoms "get worse." Approximately two and a half days later, Casper returned to the ED and was diagnosed with a perforated appendix. She was then hospitalized for twenty-two days, subsequently underwent surgery, and claims permanent injuries. The parties dispute at what point Casper's appendix perforated.

The Defendants contend that Dr. Ayasanonda did not breach the standard of care and, further, that Casper was comparatively negligent because she did not follow the discharge instructions by failing to return sooner to the ED when her symptoms worsened.

On appeal, Casper asserts that the circuit court erred by (1) denying Casper's Hawaiʻi Rules of Civil Procedure (HRCP) Rule 50[3] motion for judgment as a matter of law on the defense of

---

[2] Casper filed a complaint on March 16, 2009, against defendants Dr. Ayasanonda, Dr. Lily Gallagher (Dr. Gallagher), EGI, and Queen's Medical Center (QMC), asserting claims for negligence (Count I), failure to obtain informed consent (Count II), and vicarious liability (Count III). Summary judgment was granted in favor of Dr. Gallagher, and, pursuant to a stipulation of the parties, the claims against QMC were dismissed. Therefore, the case proceeded to trial only against Dr. Ayasanonda and EGI. Based on a further stipulation between the remaining parties, the determination of EGI's liability was based solely on vicarious liability, i.e. whether Dr. Ayasanonda was found liable.

[3] HRCP Rule 50(a)(1) provides that

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that
> (continued...)

comparative negligence; (2) giving jury instructions regarding comparative negligence; (3) giving jury instructions on ordinary negligence, thus setting out two different and confusing instructions -- medical negligence and ordinary negligence -- that Casper had to prove; (4) failing to give Casper's Proposed Jury Instruction No. 5; and (5) denying Casper's challenge for cause of a juror.

Dr. Ayasanonda and EGI filed a cross-appeal[4] asserting that, in the event we vacate the Judgment and remand for a new trial, we should not remand as to Count II (informed consent) because the circuit court improperly denied their HRCP Rule 50 motion for judgment as a matter of law on this claim. Dr. Ayasanonda and EGI thus contend that they were entitled to judgment as a matter of law on Casper's informed consent claim, the jury should not have been instructed on the informed consent claim, and the Special Verdict Form should not have contained any questions regarding the informed consent claim. Dr. Ayasanonda and EGI further note, however, that Casper's only point of error that affects the informed consent claim is her point of error regarding the jury panel. Thus, the cross-appeal need be decided only if we agree with Casper that one of the jurors should have been dismissed for cause.

We conclude that the jury instructions improperly indicate that Casper was required to prove, among other things, ordinary negligence. These instructions are erroneous,

---

[3](...continued)
        cannot under the controlling law be maintained or defeated
        without a favorable finding on that issue.

[4] The Defendants' opening brief on their cross-appeal does not comply with Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28. Most problematic is the Defendants' failure to properly present the points of error, in that they fail to identify in the points of error section where in the record the alleged errors occurred and where the alleged errors were preserved for appeal. HRAP Rule 28(b)(4). For the most part, this information is contained in the argument section of the opening brief. See Marvin v. Pflueger, 127 Hawaiʻi 490, 496-97, 280 P.3d 88, 94-95 (2012). Nonetheless, counsel is cautioned that HRAP Rule 28 should be followed or sanctions may result in the future. HRAP Rule 51.

3

misleading and prejudicial in the context of the medical malpractice claims asserted against Dr. Ayasanonda, and the jury instructions improperly contain two different standards of negligence pertaining to Dr. Ayasanonda.  We therefore vacate the Judgment with regard to the negligence claim (Count I) and the vicarious liability claim (Count III) to the extent vicarious liability is based on the negligence claim.

We further conclude that the circuit court did not abuse its discretion in denying Casper's request to dismiss for cause a juror whose wife worked for QMC.  Because we reject Casper's challenge as to the jury panel, and Casper's other points of error do not affect the verdict on the informed consent claim (Count II), the Judgment regarding the informed consent claim is affirmed.

The case is remanded to the circuit court for a new trial on Count I and Count III (to the extent Count III is based on the negligence claim).

I.    **Discussion**

A. **Casper's Appeal**

1. **HRCP Rule 50 Motion**

Casper contends that the circuit court erred in denying her HRCP Rule 50 motion for judgment as a matter of law on the comparative negligence defense.  In this regard, Casper argues there was insufficient evidence to support a comparative negligence defense because there was no evidence of a negligent act on her part.  Moreover, Casper contends we should rule as a matter of first impression that in order to have a viable comparative negligence defense to a medical malpractice claim, there must be expert opinion that the plaintiff's comparative negligence was a proximate cause of the plaintiff's injuries.  We need not address these issues, however, because the jury never reached the issue of Casper's alleged comparative negligence.

4

On the Special Verdict Form, the jury found Dr. Ayasanonda not liable as to medical negligence (Count I) and informed consent (Count II).  Specifically, the Special Verdict Form reads, in pertinent part:

> Question No. 1:
>
> As to **Count 1 (Medical Negligence)**, did **Defendant Vijak Ayasanonda** fail to comply with the applicable standard of care in his diagnosis and treatment of Plaintiff Sherri Casper?
>
> Yes ＿＿ No ✓
>
> If you answered "Yes," go to the next question.  If you answered "No," go to Question No. 3
>
> . . . .
>
> Question No. 3:
>
> As to **Count 2 (Informed Consent)**, did **Defendant Vijak Ayasanonda** fail to obtain informed consent from Plaintiff Sherri Casper?
>
> Yes ＿＿ No ✓
>
> If you answered "Yes," go to the next question.  If you answered "No" to Question No. 3 **and** "No" to either Question No. 1 **or** Question No. 2, please STOP, have your foreperson sign and date this Special Verdict Form and call the Bailiff.

The issue of Casper's comparative negligence was addressed in Questions 5 and 6 on the Special Verdict Form. Given the jury's findings as to Questions 1 and 3, the jury never reached the subsequent questions about Casper's comparative negligence.  Therefore, it is premature and unnecessary to decide whether the circuit court erred in denying Casper's HRCP Rule 50 motion, such that the comparative negligence defense was put before the jury.  The jury never reached the issue, and we need not address sufficiency of the evidence as to the comparative negligence defense.

However, Casper's related points of error are that, as a consequence of the comparative negligence defense going to the jury, the circuit court gave erroneous jury instructions that were prejudicial to Casper.  Regardless of why certain jury instructions were given, we agree that the jury instructions read

5

as a whole are prejudicially erroneous and misleading for the reasons discussed below.

## 2. Jury Instructions on Negligence

Among her challenges to the jury instructions, Casper contends that erroneous and confusing jury instructions on ordinary negligence were given affecting the claim against Dr. Ayasanonda, and thus the jury was left with the impression that Casper had to prove two standards of negligence.

> "The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 297, 141 P.3d 459, 470 (2006) (internal quotation marks and citation omitted). Generally, instructions that are found to be an erroneous articulation of the law raise a presumption that they were harmful. Turner v. Willis, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978). The presumption can be overcome however, if it "affirmatively appears from the record as a whole that the error was not prejudicial." Id.

Udac v. Takata Corp., 121 Hawai'i 143, 149, 214 P.3d 1133, 1139 (App. 2009).

Casper contends the circuit court erred in giving standard jury instructions 3.2, 6.1, 6.2, 6.3 and 6.4, which generally pertain to negligence and which were modified by the court. As given to the jury in this case, the challenged instructions read as follows, with the language most relevant to this appeal underlined:[5]

Pattern Jury Instruction 3.2, as modified

> Plaintiff must prove by a preponderance of evidence that defendant was negligent and that such negligence was a legal cause of plaintiff's injuries and/or damages. Plaintiff must also prove the nature and extent of her injuries and/or damages.

> Defendant must prove by a preponderance of the evidence that plaintiff was negligent and that such negligence was a legal cause of plaintiff's injuries and/or damages.

(Emphasis added).

------

[5] Each juror had a copy of the jury instructions while the court read the instructions to them. The jury also had the instructions during deliberations.

6

Pattern Jury Instruction 6.1, as modified

> Negligence <u>of a layperson</u> is doing something which a reasonable <u>layperson</u> would not do or failing to do something which a reasonable <u>layperson</u> would do.  It is the failure to use that care which a reasonable <u>layperson</u> would use to avoid injury to himself, herself, or other people or damage to property.
>
> In deciding whether a <u>layperson</u> was negligent, you must consider what was done or not done under the circumstances as shown by the evidence in this case.

(Emphasis added).

Pattern Jury Instruction 6.2, as modified

> In determining <u>whether a person, lay or otherwise, was negligent</u>, it may help to ask whether a reasonable person in the same situation would have foreseen or anticipated that injury or damage could result from that person's action or inaction.  If such a result would be foreseeable by a reasonable person in the same situation and if the conduct reasonably could be avoided, then not to avoid it would be negligence.

(Emphasis added).

Pattern Jury Instruction 6.3, as modified

> You must determine whether <u>any of the parties in this case were negligent</u> and whether such negligence on the part of a party was a legal cause of plaintiff's injuries or damages.  If you find that at least one <u>defendant was negligent</u> and such negligence was a legal cause of the injuries or damages, you must determine the total amount of plaintiff's damages, without regard to whether plaintiff's own negligence was also a legal cause of the injuries or damages.
>
> If you find that <u>more than one party was negligent</u> and the negligence of each was a legal cause of the injuries or damages, then you must determine the degree to which each party's negligence contributed to the injuries or damages, expressed in percentages. The percentages allocated to the parties must total 100%.

(Emphasis added).

Pattern Jury Instruction 6.4, as modified

> If you find that plaintiff's negligence is 50% or less, the Court will reduce the amount of damages you award by the percentage of the negligence you attribute to plaintiff.
>
> If, on the other hand, you find that plaintiff's negligence is more than 50%, the Court will enter judgment for defendant and plaintiff will not recover any damages.

In addition to the challenged instructions, the jury was instructed as to "medical negligence," including instructions based on standard jury instructions 14.1 and 14.3. These instructions as read to the jury were as follows:

Pattern Jury Instruction 14.1, as modified

> To prove medical negligence, plaintiff must prove all of the following elements:
>
> 1. Defendant breached the applicable standard of care; and
>
> 2. The breach of the standard of care was a legal cause of injury or damage to plaintiff; and
>
> 3. Plaintiff sustained injury or damage.

Pattern Jury Instruction 14.3, as modified

> Plaintiff is required to present testimony from an expert establishing the standard of care, that defendant breached this standard, and that defendant's breach was a legal cause of plaintiff's injury or damages.

Casper contends that with the challenged jury instructions, the jury was given differing and confusing standards setting out ordinary negligence and medical negligence, thus creating two different standards of proof. Based on the record, it appears the circuit court attempted to give general negligence instructions to address the plaintiff's comparative negligence. Thus, for instance, the circuit court added "layperson" to the standard 6.1 instruction. However, the instructions do not consistently indicate that, as to Dr. Ayasanonda, the "medical negligence" standard applies. Rather, instructions 3.2 and 6.3 reference whether the "defendant was negligent." Most problematic is that the words "lay **or otherwise**" were added to instruction 6.2, which thus expressly indicates that it applies to Dr. Ayasanonda. This instruction suggests that, in determining whether Dr. Ayasanonda "was negligent," the jurors may use their own judgement to consider, *inter alia*, "whether a reasonable person in the same situation would have foreseen or anticipated that injury or damage could result from that person's action or inaction."

In short, especially instruction 6.2, but also instructions 3.2 and 6.3 when all are read together, improperly indicate that an ordinary negligence standard applies to Dr. Ayasanonda. This is in contradiction to instructions 14.1 and 14.3, which properly instruct on medical negligence and state that medical expert testimony is required as to the standard of care, breach of duty, and causation of injury or damage.

> It is well settled that in medical malpractice actions, the question of negligence must be decided by reference to relevant medical standards of care for which the plaintiff carries the burden of proving through expert medical testimony. The standard of care to which a doctor has failed to adhere must be established by expert testimony because "a jury generally lacks the 'requisite special knowledge, technical training, and background to be able to determine the applicable standard without the assistance of an expert.'" There are, however, exceptions to the rule.

Craft v. Peebles, 78 Hawai'i 287, 298, 893 P.2d 138, 149 (1995) (emphasis added, citations omitted).

> Hawai'i does recognize a "common knowledge" exception to the requirement that a plaintiff must introduce expert medical testimony on causation. The exception is similar to the doctrine of res ipsa loquitur, and when applied, transforms a medical malpractice case "into an ordinary negligence case, thus obviating the necessity of expert testimony to establish the applicable standard of care." This exception is "rare in application," and applies in instances such as "[w]hen an operation leaves a sponge in the patient's interior, or removes or injures an inappropriate part of his anatomy, or when a tooth is dropped down his windpipe or he suffers a serious burn from a hot water bottle, or when instruments are not sterilized[.]"

Barbee v. Queen's Med. Ctr., 119 Hawai'i 136, 159, 194 P.3d 1098, 1121 (App. 2008) (emphasis added, citations omitted).

> In the ordinary negligence case the jury can determine whether there has been a breach of defendant's duty to the plaintiff on the basis of their everyday experience, observations and judgment. The ordinary negligence case will not require expert opinion evidence to delineate acceptable from unacceptable standards of care. However, in the medical negligence case, lay jurors are ill prepared to evaluate complicated technical data for the purpose of determining whether professional conduct conformed to a reasonable standard of care and whether there is a causal relationship between the violation of a duty and an injury to the patient. Therefore, expert opinion evidence is generally required to aid the jury in its tasks.

Bernard v. Char, 79 Hawai'i 371, 377, 903 P.2d 676, 682 (App. 1995) (citations, brackets, and emphasis omitted).

This is not an ordinary negligence case because the facts here do not present "routine or non-complex matters wherein a lay person is capable of supplanting the applicable standard of care from his or her 'common knowledge' or ordinary experience." Craft, 78 Hawai'i at 298, 893 P.2d at 149. Therefore, as instructions 14.1 and 14.3 properly explain, expert medical testimony was required to establish the applicable standard of care, breach of duty, and causation on the part of Dr. Ayasanonda.

It was improper to mix the standards for medical malpractice and ordinary negligence in regard to the claim against Dr. Ayasanonda. To the extent that instruction 6.2 suggests that the negligence of a person "lay or otherwise" can be determined by what a reasonable person in the same situation can foresee, without reference to the standard of care established by expert medical testimony, the instruction was not an accurate articulation of the law, was in error and is presumed harmful.[6] See Udac, 121 Hawai'i at 149, 214 P.3d at 1139. Further, instruction 6.2 makes the generic references in instructions 3.2 and 6.3 as to whether the "defendant was

---

[6] We note that Casper argues the circuit court erred in both giving instruction 6.2 and in refusing to give Plaintiff's Proposed Instruction No. 5, which also instructs on foreseeability, but from the perspective of a reasonably prudent physician. In our view, for the same reasons instruction 6.2 is erroneous, Plaintiff's Proposed Instruction No. 5 is not an accurate reflection of the law either. That is, foreseeability is relevant under ordinary negligence standards, but is not relevant when medical malpractice standards apply, which instead must be based on medical expert opinion. Compare Craft, 78 Hawai'i 287, 893 P.2d 138, Barbee, 119 Hawai'i 136, 194 P.3d 1098 and Bernard, 79 Hawai'i 371, 903 P.2d 676 (medical malpractice), with Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 742 P.2d 377 (1987), and Bidar v. Amfac, Inc., 66 Haw. 547, 669 P.2d 154 (1983) (ordinary negligence).

Although Plaintiff's Proposed Instruction No. 5 also erroneously sought to inject foreseeability into the jury's considerations, Casper specifically argued to the circuit court that instructions 3.2, 6.2 and 6.3 should not be given and asserted at various points that the jury instructions were improperly mixing ordinary negligence and medical malpractice standards that she had to prove against Dr. Ayasanonda. Thus, Casper sufficiently preserved her challenges to these instructions for appeal.

negligent" even more likely to have caused confusion regarding what standard applied to Dr. Ayasanonda.

The presumption that an erroneous jury instruction is harmful can be overcome if it "affirmatively appears from the record as a whole that the error was not prejudicial." Id. (citation omitted). The best argument that can be made as to why the erroneous instructions are not prejudicial is that Question 1 in the Special Verdict Form specifically references "medical negligence" and asks whether Dr. Ayasanonda "fail[ed] to comply with the applicable standard of care in his diagnosis and treatment of [Casper]." However, given that instruction 6.2 uses the generic word "negligent," yet indicates that it applies to Dr. Ayasanonda and that foreseeability may be considered, and given further that instructions 3.2 and 6.3 also generically reference whether the "defendant was negligent," we cannot say with any confidence that the wording in the Special Verdict Form cured the erroneous jury instructions.

We also note the record indicates that the jury was not unanimous in its findings on the Special Verdict Form. In this case, Casper and the Defendants stipulated that 13 jurors would deliberate and that each of the issues could be decided by agreement of 10 jurors. Based on polling of the jurors after the verdict was rendered, the verdict was decided in favor of Dr. Ayasanonda by a 10-3 vote.

The jury instructions read as a whole presented conflicting standards and some of the instructions suggested that Dr. Ayasanonda could be found not negligent based on the jurors' own knowledge and expectations. We cannot say the record establishes that the erroneous instructions were not prejudicial. Therefore, we must vacate the Judgment as to Counts I and III related to whether Dr. Ayasanonda was negligent and whether EGI is vicariously liable for Dr. Ayasanonda's alleged negligence.

### 3. Casper's Challenge to Juror for Cause

Casper contends the circuit court erred in denying her challenge to a prospective juror whom Casper maintains could not

11

be impartial. Casper argues she was harmed by the court's decision because she was forced to use a peremptory challenge to excuse the prospective juror. Without reaching the question whether Casper has shown she was prejudiced, we conclude the circuit court had a sufficient basis not to exclude the juror.

A trial court's decision whether to pass a juror for cause is reviewed under the abuse of discretion standard. State v. Kauhi, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Id. (citation and internal quotation marks omitted).

During voir dire, Casper's counsel questioned a prospective juror regarding his wife's employment with QMC.

> MR. BICKERTON: Do you feel that that family connection that you have to Queen's gives one side a leg up today?
>
> PROSPECTIVE JUROR: I think it's only human nature that, you know, you kind of back your spouse's company. . . . I guess you would call it favoritism.
>
> MR. BICKERTON: Does the fact that it's [EGI] and not Queen's make a difference?
>
> PROSPECTIVE JUROR: You know, I mean, she's worked there for nine years. I never knew this. And as far as I know--I mean, she plays volleyball in the Queen's league and ER has a team that's in the volleyball league. I never knew that. To me, they are all Queen's employees.
>
> MR. BICKERTON: So you think it would actually, even though you would try to set it aside, you think it would affect your ability to be fair?
>
> PROSPECTIVE JUROR: I think it would, yes.
>
> MR. BICKERTON: Your Honor, we would ask that [Prospective Juror] be excused for cause.
>
> THE COURT: [Prospective Juror,] just a follow-up question.
> You know, while it's understandable what you just shared with us, you know, your wife works at Queen's, you know, so you sort of look favorably perhaps on Queen's. And this particular underlying event did involve the Queen's ER.
> . . . .
> Are you the kind or person if I were to tell you, [Prospective Juror]--you know, you recognize you have that issue, but you cannot and should not allow it to affect your decision-making. Are you the kind of person that can set it on the side and go ahead and go forward with the decision-

> making?  Or do you think it's not going to be easy for you?
> Because everybody has issues.
>
> PROSPECTIVE JUROR: Yeah, I think it will always be
> there.  And I don't know if--I don't know what's going to
> happen at the time, you know.  I can say yeah now, but, you
> know, I don't know.
>
> THE COURT: <u>Would you do your best to basically follow
> the Court's instruction? That's what I need to know</u>.
>
> PROSPECTIVE JUROR: <u>I would try my best, yeah</u>.

(Emphasis added).  The Defendants objected to the challenge for cause, stating that "[t]he witness said he would do his best to follow your instructions."  The circuit court disallowed the challenge for cause at that point in time because it did not "believe there is an adequate record shown" but allowed Casper's counsel to ask follow up questions.

> MR. BICKERTON: So you know the members of the ER team
> at least by face, for example, even if you don't know all
> their names?
>
> PROSPECTIVE JUROR: Yeah.
>
> MR. BICKERTON: The Judge read a list of names you may
> not have recognized. <u>But if one of them is up here, someone
> you know or are friends with from the volleyball games,
> would you be able to distance yourself from that and say,
> look, I'm just going to treat them like anyone else, I'm not
> going to judge their credibility differently just because I
> know them or I'm friends with them</u>?
>
> PROSPECTIVE JUROR: <u>Yeah, I believe I can do that</u>.
>
> MR. BICKERTON: And same thing for a doctor. If a
> doctor from Queen's comes and testifies one way or the
> other, you feel you could put that aside?
>
> PROSPECTIVE JUROR: Unless they play for the volleyball
> team, I probably don't know them anyway.

(Emphasis added).

Casper argues that the prospective juror's partiality was clear and manifest.

> When a juror is challenged on grounds that he has
> formed an opinion and cannot be impartial, the test is
> "whether the nature and strength of the opinion ... are such
> as in law necessarily ... raise the presumption of
> partiality."  The question "is one of mixed law and fact,"
> and "the affirmative of the issue is upon the challenger."
> Furthermore, the reviewing court is bound by "the
> proposition that findings of impartiality should be set
> aside only where prejudice is 'manifest.'"

State v. Graham, 70 Haw. 627, 633-34, 780 P.2d 1103, 1107 (1989) (citations and brackets omitted).

The above quoted transcript demonstrates that the prospective juror's opinions were not "strong and deep impressions which close the mind against the testimony that may be offered in opposition to them." Id. at 634-35, 780 P.2d at 1108 (citation omitted). The prospective juror stated that he would "try my best" to follow the court's instructions, and that he would not base his judgment on credibility of witnesses upon possibly recognizing them from a volleyball league. Casper has not demonstrated a presumption of partiality nor that the prospective juror's prejudice was manifest. See id. at 634-36, 780 P.2d at 1107-08.

Based on the above, the trial court did not abuse its discretion.

## B. Defendants' Cross-Appeal as to Informed Consent

We need not address the Defendants' cross-appeal which asserts that the circuit court should have granted Defendants' motion for judgment as a matter of law on the informed consent claim. The jury found for the Defendants on the informed consent claim. The only point of error raised by Casper in her appeal that potentially affects the verdict on informed consent is Casper's challenge to the prospective juror. Because we have determined that the circuit court did not abuse its discretion with regard to the prospective juror, the verdict on the informed consent claim in favor of Defendants will stand.

## II. Conclusion

For the foregoing reasons, the Judgment filed on July 20, 2011, in the Circuit Court of the First Circuit, is vacated as to the negligence claim (Count I) and the claim for vicarious liability (Count III), to the extent that vicarious liability is based on the negligence claim. The case is remanded to the circuit court for a new trial on these issues.

The Judgment in favor of the Defendants on the informed consent claim (Count II) is affirmed.

DATED: Honolulu, Hawai'i, June 6, 2014.

On the briefs:

James J. Bickerton
Stephanie L. Marn
(Bickerton Lee Dang & Sullivan)
for Plaintiff-Appellant
and Cross-Appellee

Edmund Burke
John Reyes-Burke
(Burke McPheeters Bordner & Estes)
for Defendants-Appellees
and Cross-Appellants

Presiding Judge

Associate Judge

Associate Judge

15